```
1              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
2                   ORLANDO DIVISION

3              Docket No. 6:14-cr-248

4   . . . . . . . . . . . . . .
    UNITED STATES OF AMERICA    :
5                               :        Orlando, Florida
            Plaintiff           :        August 17, 2015
6                               :        10:41 a.m.
                 v.             :
7                               :
    JEAN ROUSSEL ELOI           :
8                               :
            Defendant           :
9   . . . . . . . . . . . . . .

10

11         TRANSCRIPT OF SENTENCING, VOLUME II
          BEFORE THE HONORABLE JOHN ANTOON, II
12              UNITED STATES DISTRICT JUDGE

13

14  APPEARANCES:

15

16  For the Plaintiff:  Bruce S. Ambrose

17

18  For the Defendant:  Maria Guzman

19

20

21

22  Court Reporter:    Amie R. First, RDR, CRR
                       AmieFirst.CourtReporter@gmail.com
23

24  Proceedings recorded by mechanical stenography.

25  Transcript produced by Computer-Aided Transcription.
```

```
 1                    P R O C E E D I N G S

 2                         * * * * *

 3          THE DEPUTY CLERK:  This is the case of United

 4    States of America versus Jean Roussel Eloi, Case Number

 5    6:14-cr-248.

 6          Will counsel please state their appearances for

 7    the record?

 8          MR. AMBROSE:  Good morning, Your Honor.  Bruce

 9    Ambrose for the United States.  With me at counsel table is

10    Task Force Agent Michael Spadafora from the Brevard County

11    Sheriff's Office.

12          MS. GUZMAN:  And good morning, Your Honor.  Maria

13    Guzman, Assistant Federal Defender, on behalf of Mr. Eloi.

14          I would note the presence in the courtroom of his

15    family who traveled from South Florida again for his

16    sentencing.

17          THE COURT:  Okay.  I don't recall, did they speak

18    the last time they were here?

19          MS. GUZMAN:  They did not, Your Honor, and they

20    likely will not speak today either.

21          THE COURT:  Okay.  Well, this matter was continued

22    to consider some of the factors under the guideline

23    provisions that were at play in this case which are

24    interesting and I think resulted in arguments on behalf of

25    the parties that were ironic, starting with Miss Guzman's
```

 1   motion to continue based on the withholding of adjudication

 2   of a prior -- in a prior offense.

 3          I've resolved those with the benefit of research

 4   and the assistance of counsel.  And I intend on writing an

 5   order explaining my reasoning.

 6          But I find that subsection A applies using,

 7   relying on the Breitweiser, the reasoning in Breitweiser

 8   and the conduct referenced in that.

 9          And I think the defendant is right that it's not

10   that you look at the two -- for this section, the two

11   competing guidelines and you take the highest of the two.

12   I think that this is a situation where if A applies,

13   B doesn't apply.  It goes to -- well, you look just to the

14   calculations under A.

15          So I'm going to start over with the colloquy.  I

16   think we may have started that last time.

17          Mr. Eloi, would you stand to be sworn, please?

18          THE DEFENDANT:  Yes, sir.

19          THE DEPUTY CLERK:  Raise your right hand.

20          (Defendant sworn.)

21          THE DEFENDANT:  Yes, ma'am.

22          THE COURT:  Sir, what is your full name?

23          THE DEFENDANT:  Jean Roussel Eloi.

24          THE COURT:  And, Mr. Eloi, have you had any pills,

25   drugs, medication, or alcohol within the past 48 hours?

```
1              THE DEFENDANT:  No, sir.

2              THE COURT:  Have you been under the care of a

3    psychiatrist or psychologist for a mental or emotional

4    disorder in the past?

5              THE DEFENDANT:  No, sir.

6              THE COURT:  Are you thinking clearly and

7    exercising your best judgment today?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  Okay.  You can have a seat, sir.

10             Mr. Eloi, on February 3, 2015, a jury found you

11   guilty of count one of the indictment charging you with

12   coercion or enticement of a minor to engage in sexual

13   activity, in violation of Title 18, United States Code,

14   Section 2422(b).  I have adjudged you guilty of that

15   offense.

16             We've now reached that stage in the proceedings

17   where it's necessary for me to ask questions of you,

18   Miss Guzman, and Mr. Ambrose representing the Government.

19             First, have you had an opportunity to read and

20   discuss the presentence report with Miss Guzman?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  Do you have any objections as to the

23   factual accuracy of the report?

24             MS. GUZMAN:  Your Honor, obviously this was a

25   trial.  So he would not be admitting any of the facts
```

1   contained within the report.

2          However, as the Court has determined the possible

3   calculations, we have no objections.

4          THE COURT:  Okay.  Does the Government have any

5   objections?

6          MR. AMBROSE:  No, Your Honor.

7          THE COURT:  There being no objections to the

8   factual statements and the guideline calculations contained

9   in the report, the Court will make findings of fact and

10  determine the advisory guidelines based on its ruling.

11         Has the probation office recalculated the score

12  based on my ruling?

13         PROBATION OFFICER:  Yes, Your Honor, we did.

14         The total offense level will be 38, with a

15  criminal history category of V.  The guideline imprisonment

16  range will be 360 months to life.  And the fine will remain

17  the same.

18         THE COURT:  Okay.

19         MR. AMBROSE:  Your Honor, if I could interrupt, at

20  the previous hearing we had intended to offer the actual

21  court documents from the Palm Beach County case.

22         THE COURT:  Okay.

23         MR. AMBROSE:  Given the defense's position and the

24  Court's ruling that you've announced, it probably would be

25  advisable, we think it's advisable to have those court

```
 1   records as an exhibit.

 2           THE COURT:  Oh, absolutely.

 3           MS. GUZMAN:  And so we have no objection.

 4           And for purposes of the record, we would withdraw

 5   any Shepard objections that we made at the prior hearing.

 6           MR. AMBROSE:  I have marked those as Government's

 7   Exhibit 3.

 8           (Government's Exhibit 3 was received

 9            in evidence.)

10           THE COURT:  Thank you, Mr. Ambrose.

11           The Court determines that the advisory guidelines

12   are total offense level 38; criminal history category V;

13   360 months to life imprisonment; 5 years' supervised

14   release; restitution is not applicable; $25,000 to $250,000

15   fine; $100 special assessment.

16           Do you know of any reason why the Court should not

17   now proceed with imposition of sentence?

18           MR. AMBROSE:  No, Your Honor.

19           MS. GUZMAN:  No, Your Honor.

20           THE COURT:  Do you wish to make a statement or

21   present any information in mitigation of sentence?

22           MS. GUZMAN:  Your Honor, if I may.  Very briefly.

23           Your Honor, good morning.  It seems like a long

24   time ago that I provided the Court with a sentencing

25   memorandum in this case.  But what I indicated in that
```

```
 1   sentencing memorandum for the Court's review remains the
 2   same today.
 3         The statutory penalty that this Court must impose
 4   on Mr. Eloi is anywhere between a minimum of ten years and
 5   a maximum of life.  The advisory guideline range, of
 6   course, is 30 to life, which is a substantial increase from
 7   what he's facing statutorily in terms of the minimum
 8   penalties prescribed by law.
 9         In my sentencing memorandum, I asked the Court to
10   review a lot of different things.  I asked the Court to
11   review his family history.  Again, his family is very
12   supportive.  They've come from West Palm Beach on two
13   occasions to be here for Mr. Eloi.  They do not wish to
14   speak.  They are somewhat overcome by the situation.  And
15   they want the Court to know that they are very supportive.
16   The members in the courtroom include his mother and his
17   sisters.
18         I would note that as already described in my
19   sentencing memorandum -- and I'm not going to belabor the
20   issue -- the Court obviously witnessed the trial in this
21   case.  And the Court has read all of these documents
22   already.
23         But the Court has the power and the discretion to,
24   in any case, determine a sentence that's fair and
25   reasonable and not excessive.
```

1      Obviously the guidelines call for a very, very,

2   very severe penalty in this case, which is 30 years to

3   life.  What we're asking the Court to do is to balance out

4   everything the Court has heard in this case.  And that is

5   everything that happened during the course of the trial,

6   anything that was said in the prior hearing.

7      The Court had the opportunity to find out a little

8   bit about this prior case in West Palm Beach.  As the Court

9   may recall, the officer that investigated that case

10  testified for the Government.

11      And he indicated at the time that obviously

12  Mr. Eloi was charged with that crime and that he

13  interviewed Mr. Eloi and that Mr. Eloi had repeatedly said

14  to the investigator on that case that he thought that the

15  victim was 18.

16      That remains undisputed because there was no

17  further investigation that occurred in that case.  Of

18  course, the victim turned out to be less than 18.  But

19  there isn't anything to dispute what Mr. Eloi continuously

20  told that investigator that he believed that the child was

21  of age.

22      Again, not to belabor that point, but obviously

23  it's evidence that this Court heard and the Court has to

24  evaluate in determining whether -- obviously the personal

25  characteristics of Mr. Eloi are known to the Court.  But

1    the Court also has to balance out other 18/3553 factors;

2    one of them being deterrence; one of them is promoting

3    justice; one of them is protecting the community.

4         So I ask the Court to take all of those facts that

5    have already come before it in determining what an

6    appropriate sentence is in this case.

7         Mr. Eloi pled not guilty to this case.  He

8    proceeded to trial.  He was found guilty by a jury.

9    Obviously, that is something that the Court heard as well.

10   And the Court heard the evidence in that case.

11        And not to belabor the issue, but the Court heard

12   from the victims in this case, one of whom was the mother

13   of the underage child with whom Mr. Eloi had had a

14   relationship with for a period of time.  The very confusing

15   and maybe unique case facts presented at trial.

16        But, again, the jury found him guilty, but now we

17   stand before this Court to determine what an appropriate

18   sentence is.

19        I'm asking the Court to consider that a sentence

20   less than 30 years to life is appropriate in this case.

21   Again, the minimum mandatory is ten.  I know that the Court

22   has discretion anywhere between giving Mr. Eloi a ten-year

23   sentence, a fifteen-year sentence, a twenty-year sentence,

24   a thirty-year sentence or anything in between.

25        We're asking the Court to consider that a sentence

 1   of perhaps 15 years in this case would be fair and

 2   reasonable, sufficient but not greater than necessary to

 3   promote justice, to deter further conduct.  Obviously he's

 4   going to be locked away for a very long period of time.

 5          One of the factors in 18/3553(a) also calls for

 6   rehabilitation of a defendant.  We certainly hope that

 7   during the time he's in custody he receives rehabilitation

 8   and he receives mental health treatment.  I think he needs

 9   that.  And obviously that would be good for him and for the

10   community.

11          So, again, not belaboring everything that's

12   already come before this Court, I know this Court is very

13   attentive to everything that he hears.  We're asking the

14   Court to consider that perhaps a sentence anywhere between

15   the range of 15 to 20 years would be appropriate in this

16   case.

17          The Court has obviously determined the

18   30-year-to-life sentence based on the guideline provisions

19   that have increased his criminal history category to V.  As

20   the Court is well aware, his criminal history category

21   remains at I.

22          So even if the Court were to sentence him to a

23   level 38 but then consider that because he really is a

24   criminal history category number I, take that into

25   consideration, we ask the Court to do that as well.

1          I understand it's a very serious case.  I

2    understand that this is a very serious case.  And the Court

3    has to do -- balance out a lot of different factors.

4          But I do think that a sentence of 30 years to

5    life, even under all the factors of this case, would be

6    excessive.

7          I have explained to Mr. Eloi that he has the

8    opportunity to address this Court.  However, under the

9    circumstances that this was a trial, he has pled not

10   guilty, and this case will likely proceed to some appellate

11   forum, it has been my recommendation that he not provide a

12   colloquy to this Court.  But that's my recommendation.

13         THE COURT:  You have a right to speak, Mr. Eloi.

14   You also have a right not to speak.

15         Do you wish to follow your attorney's advice and

16   not speak?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  Okay.  Thank you, sir.

19         Mr. Ambrose?

20         MR. AMBROSE:  Since the Court, as I understand it,

21   has ruled and will issue an order finding that the 2006

22   case was a prior sex conviction, it would seem that that

23   then implicates 18 U.S.C. 2247 which doubles the mandatory

24   minimum from ten to twenty.

25         THE COURT:  Hold on one second.

```
 1              Thank you for pointing it out, Mr. Ambrose.

 2              Let me ask Miss Hernandez whether she concurs with

 3    that.

 4              And you, too, Miss Guzman.  I'm going to ask you.

 5              MR. AMBROSE:  And I believe that was the statute

 6    at play in Breitweiser.

 7              THE COURT:  Yeah.

 8              PROBATION OFFICER:  That is correct.

 9              THE COURT:  Do you agree?

10              PROBATION OFFICER:  Yes, Your Honor.  We agree

11    with what the Government expressed regarding man/min.

12              THE COURT:  Do you agree?

13              MS. GUZMAN:  Your Honor, I believe that the

14    Government is referring to 18/2247, repeat offenders; is

15    that correct?

16              MR. AMBROSE:  That is correct.

17              MS. GUZMAN:  Okay.  I think that that particular

18    section deals with the maximum term of imprisonment, not

19    the minimum.

20              Am I not reading that correctly?

21              MR. AMBROSE:  Oh, you're right.  My apologies.

22              MS. GUZMAN:  It says that the maximum term of

23    imprisonment for a violation after a prior sex offense

24    shall be twice the term otherwise provided by this chapter.

25              So it's not the minimum.  It's the maximum.
```

1          MR. AMBROSE:  Right.  My error.

2          THE COURT:  Okay.  But that's good that we're

3    completing the record.

4          Okay.  Mr. Ambrose?

5          MR. AMBROSE:  All right.  So if we're going to

6    look at beyond the conviction of 2006, let's do that.

7          What happened in Boynton Beach?  Based upon the

8    testimony of Detective Athol and his affidavit, the

9    recorded interview of the defendant, he engaged in multiple

10   sex acts with a minor child.

11         Now, the argument has been made that he didn't

12   know the young lady was a minor, that he thought she was

13   18.  And yet the evidence is also undisputed that when he

14   was finished with her, he returned her to her middle

15   school.  And he had some explanation for that.

16         We don't know why the Boynton Beach or the Palm

17   Beach County State Attorney's Office charged the case the

18   way they did.  It's impossible for us to know.  We can

19   speculate.  There were clearly witness problems.  The young

20   lady had been committed for treatment.  Consent, although

21   not a legal defense, would have been an issue apparently.

22         The fact remains that Mr. Eloi engaged in multiple

23   sex acts with a young lady.  And that was a violation of

24   the law, the result of which was a plea to this offense

25   under the Florida Statute and a five-year term of

1    probation.

2          The practical effect of which -- and one that may

3    have been a strong factor in getting there -- was that

4    being convicted of that offense meant he did not have to

5    register as a sex offender.  So those are a number of

6    factors that perhaps were at play back in 2006.

7          Then you compare what happened in this case.  Our

8    position is that Mr. Eloi targeted the 11-year-old.  He did

9    it deliberately, and he did it through the mother.

10         He met the young lady at the store where he worked

11   when she was there in the company of her mother.  As I

12   recall the evidence, he commented to the young girl how

13   pretty she was.  And it's our contention that he used the

14   mother to get to the young daughter.  And we think the

15   facts support that.

16         This was not a sting operation where an agent

17   pretended to be an 11-year-old or the mother of an

18   11-year-old.  This was a real girl.

19         And this man had every intention of doing exactly

20   what he said he wanted to do in the crudest possible terms.

21   He demonstrated the sexual appetites that he had in 2006

22   and that he continues to have.

23         And the guidelines tell us, the 4B1.5 guideline is

24   for repeat sex offenders.  Because they are, quote, a

25   continuing danger to society, close quote.  Not a past

1   danger.  Not a rehabilitated danger.  A continuing danger.

2          He was given one heck of a chance in 2006.  He

3   walked away with a slap on the wrist.  And that did not

4   deter him whatsoever once he came off of probation five

5   years later and he targeted that young girl.

6          So what are the 3553 factors that we think are

7   important that should guide the Court to a life sentence?

8   This man is a danger to society.  He's a continuing danger

9   to young girls.  There's been no expression of remorse.

10  And we understand why he chose not to say anything, but he

11  could have still expressed something.

12         The Court should take into account the possibility

13  of rehabilitation.  Our position is there is no

14  rehabilitation for this man.  He has an appetite that will

15  not be satisfied unless it's with a young girl.

16         We look at the young girl in this case.  She was a

17  vulnerable victim from the very beginning.  She came from a

18  disadvantaged home and living life in difficult

19  circumstances.  This was not an Ozzie and Harriet home.

20         But he targeted her.  And one can only imagine the

21  psychological harm that would have been inflicted had he

22  been allowed to carry through with his intent and not been

23  caught.

24         Regardless of what the guideline section says, the

25  guideline range, our position is this man is a continuing

1  danger to our society, to the young women who live in our

2  community, and he needs to spend the rest of his life in

3  prison.

4  　　　　　Thank you.

5  　　　　　THE COURT:  Would you approach the lectern with

6  your client, please, Miss Guzman?

7  　　　　　MS. GUZMAN:  Yes, Your Honor.

8  　　　　　THE COURT:  I've asked the defendant why judgment

9  should not now be pronounced; and after hearing response

10  from counsel, the Court finds no cause to the contrary.

11  　　　　　The parties have made statements on their behalf

12  and Mr. Eloi through counsel.  And the Court has reviewed

13  the presentence report and the advisory guidelines.

14  　　　　　Pursuant to Title 18, United States Code,

15  Sections 3551 and 3553, it's the judgment of the Court that

16  the defendant, Jean Roussel Eloi, is hereby committed to

17  the custody of the Bureau of Prisons to be imprisoned for a

18  term of 360 months.

19  　　　　　Upon release from imprisonment, you shall serve

20  ten years on supervised release.  While on supervised

21  release, you shall comply with the standard conditions

22  adopted by the Court in the Middle District of Florida.

23  　　　　　In addition, you shall comply with the following

24  special conditions:

25  　　　　　You shall participate in a mental health program,

1    a mental health program specializing in sexual offender

2    treatment and submit to polygraph testing for treatment and

3    monitoring purposes.  You shall follow the probation

4    officer's instructions regarding implementation of this

5    directive.

6            Further, you shall contribute to the cost of such

7    treatment and polygraph examinations not to exceed an

8    amount determined reasonable by the probation officer based

9    on ability to pay or availability of third-party payment

10   and in conformance with the probation office's sliding

11   scale for treatment services.

12           You shall register with the state sexual offender

13   registration agency in any state where you reside, visit,

14   are employed, carry on a vocation, are a student, as

15   directed by the probation officer.

16           The probation officer shall provide state

17   officials with all information required under the Florida

18   sexual predator and Sexual Offender Notification and

19   Registration statutes, Florida Statute 943.0435, and Sex

20   Offender Registration and Notification Act, Title I of the

21   Adam Walsh Child Protection and Safety Act of 2006, Public

22   Law 109-248, and may direct you to report to these agencies

23   personally for required -- personally for required

24   additional processing such as photographing,

25   fingerprinting, and DNA collection.

1            You shall have no contact with minors under the

2    age of 18 without written approval of the probation

3    officer.  And you shall refrain from entering into any area

4    where children frequently congregate, including schools,

5    day care centers, theme parks, play grounds, et cetera.

6            You're prohibited from possessing, subscribing to,

7    or viewing any images, videos, magazines, literature, or

8    other material depicting children in the nude or in other

9    sexually explicit positions.

10           Without prior written approval from the probation

11   officer, you're prohibited from possessing or using a

12   computer, including a smartphone, handheld computer device,

13   a gaming console, or an electronic device capable of

14   connecting to an online service or Internet service

15   provider.

16           This prohibition includes a computer at a public

17   library or Internet cafe, your place of employment, or

18   educational facility.

19           You're also prohibited from possessing an

20   electronic data storage medium, including a flash drive,

21   compact disc, a floppy disk, or using any data encryption

22   technique or program.

23           If approved to possess or use a device, you must

24   permit routine inspection of the device, including the hard

25   drive and any other electronic data storage medium to

1    confirm adherence to this condition.

2         The United States Probation Office must conduct

3    the inspection in a manner no more intrusive than necessary

4    to ensure compliance of this condition.

5         If this condition might affect a third party,

6    including your employer, you must inform the third party of

7    this restriction, including the computer inspection

8    provision.

9         You shall submit to a search of your person,

10   residence, place of business, any storage unit under your

11   control, computer, or vehicle conducted by the United

12   States probation officer at a reasonable time and in a

13   reasonable manner based upon reasonable suspicion of

14   contraband or evidence of a violation or condition of

15   release.

16        You shall inform any other residents that the

17   premises may be subject to search pursuant to this

18   condition.  Failure to submit to search may be grounds for

19   revocation.

20        You're prohibited from incurring any new credit

21   charges, opening additional lines of credit, or obligating

22   yourself for major purchases without approval of the

23   probation officer.  You shall provide the probation officer

24   access to any requested financial information.

25        Having been convicted of a qualifying felony,

1    you'll cooperate in the collection of DNA as directed by

2    the probation officer.

3            The mandatory drug testing requirements of the

4    Violent Crime Control Act are waived.  However, I order

5    that you submit to random drug testing not to exceed

6    104 tests per year.

7            It's further ordered that you shall pay the United

8    States a special assessment of $100 due immediately.

9            Is there any forfeiture issue in this case?

10           MR. AMBROSE:  Yes, Your Honor, there is.

11           The cell phone that was seized from the defendant

12   at the time of his arrest.  I think that's it.

13           THE COURT:  Is there any objection --

14           MS. GUZMAN:  There's no objection.

15           THE COURT:  -- to forfeiture?

16           MS. GUZMAN:  There is not.

17           THE COURT:  Those items will be forfeited.  They

18   are ordered forfeited.

19           After considering the advisory sentencing

20   guidelines and all the factors identified in Title 18,

21   United States Code, Section 3553(a)(1) through (7), I find

22   the sentence imposed is sufficient but not greater than

23   necessary to comply with the statutory purposes of

24   sentencing.

25           I further find that this sentence would have been

1    imposed regardless of which section of the 4B1.5 would

2    have -- that would have been applied.

3           Now, because the sentence is great, I think I do

4    need to just make a couple brief comments.  Normally I

5    don't when it's within the guidelines.

6           But I take into account all the things that

7    Miss Guzman says on your behalf.  You're a young man.  You

8    have the support of a family.  A lot of people don't when

9    they come here.  And that's a good thing.

10          The problem, the problem with imposing a sentence

11   less than this is you did, indeed, target this child.  And

12   you did it after -- you did it by rouse, by deception, by

13   occurring favor with the mother.  Whatever your interests

14   were in her, it appears that -- well, you're shaking your

15   head.  I listened to the testimony, and that's my

16   conclusion.

17          And at the time of the trial, I knew nothing about

18   the Palm Beach event.  But you see, I have to take into

19   account these factors that I just referred to.  Some of

20   them having to do with your personal history and your

21   family background are positive.

22          But to the extent they are positive -- in other

23   words, in your favor -- they are outweighed by the fact

24   that you are a -- your history includes a prior sexual

25   conduct with a child.  And I know you say you thought she

```
 1   was 18, but you knew she went to a middle school.

 2          Well, you know, your denial is a problem, too.

 3   You know, that doesn't help at all.  You're shaking your

 4   head and not listening to me.  I don't care whether you

 5   agree with me at this point or not -- no, listen.

 6          It doesn't matter to me whether you agree with me

 7   or not.  What I'm doing is I'm explaining for you -- you're

 8   not listening --

 9          THE DEFENDANT:  Yes, sir, I am.

10          THE COURT:  -- or don't agree.

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Which is fine.

13          THE DEFENDANT:  I'm not shaking at you, sir.

14          THE COURT:  Listen, listen.

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  I'm explaining my reasons --

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  -- for the benefit of the people here.

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  The attorneys who have much invested.

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  The agent who's had to go through all

23   of this.

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Twice coming.
```

```
 1            THE DEFENDANT:  Yes, sir.
 2            THE COURT:  And I'm explaining it for the record.
 3            THE DEFENDANT:  Yes, sir.
 4            THE COURT:  Because it's likely that this case is
 5   going to be reviewed on appeal.
 6            THE DEFENDANT:  Yes, sir.
 7            THE COURT:  And it may be reviewed later under
 8   some collateral proceeding.  So I think it's important that
 9   people understand my view of the case.
10            THE DEFENDANT:  Yes, sir.
11            THE COURT:  And my view of this is that you had an
12   opportunity to never commit a crime against a child, a
13   sexual crime against a child again.
14            THE DEFENDANT:  Yes, sir.
15            THE COURT:  Like Mr. Ambrose, I have no idea why
16   you got probation for the offense in Palm Beach County.  I
17   don't know that -- I've never seen that statute before.
18   And I've been around for a while in the state court system.
19            That never would have been treated -- that case
20   never would have been treated that way in any of the
21   several counties where I sat as a circuit judge.  But
22   that's how it was treated.  And it was an opportunity for
23   you to never run that risk again, never abuse a child
24   again.  And you attempted to.
25            And there's no doubt that if your plan had
```

1   succeeded, based on the conversation that I heard, that you

2   would have done exactly the kinds of things you discussed

3   with that child.  And the child was vulnerable.

4          So one of the factors that I need to consider here

5   and I think it's one of the most important factors in this

6   kind of case is to provide protection for the public.  And

7   I think the public needs to be protected from you because

8   I -- at this point, I have evidence that you will go out

9   and -- you would go out and do this again.

10         Now, that's not to say you're otherwise a bad

11  person, you know, in all other respects.  I've read the

12  letters from your lovely family.  And your sister's letter

13  -- I mean, I read that sometime ago.  And it's still with

14  me.  So I know that they have great affection for you and

15  see good in you.  And I don't deny that that's there.

16         But the problem is that you are a risk, and I

17  cannot impose another sentence that would reflect the

18  seriousness of the offense and serve as a deterrent, which

19  I'm -- sometimes, you know, the deterrence is to -- it's a

20  message to the general -- to the public that if you commit

21  this crime, this is a -- there's going to be a significant

22  penalty.

23         In your case, the incarceration is to keep you

24  from committing the crime as well as the general

25  deterrence.

```
 1              Now, I know you wanted to interrupt me and say

 2    something, and that's fine with me.  I mean, I didn't want

 3    you to interrupt me, but I'd be glad to hear from you.

 4              But I don't think it's fair to Miss Guzman who has

 5    tried so hard to protect you throughout these proceedings

 6    and give you the benefit of her counsel.

 7              If you want to speak to me, I advise you to talk

 8    to her before you do.

 9              THE DEFENDANT:  Yes, sir.

10              THE COURT:  Do you want to do that?

11              (Discussion off the record.)

12              MS. GUZMAN:  Okay.  Your Honor, I think he

13    declines to say anything at this time after conversation

14    with counsel.

15              THE COURT:  Okay.  I didn't mean to be rude, but I

16    needed to explain.  And your shaking your head while I'm

17    talking was a distraction.  It doesn't mean that I expect

18    you to agree with anything that I say, but I needed to

19    explain it.

20              Okay?

21              THE DEFENDANT:  Thank you.

22              THE COURT:  And you're not being treated any

23    differently for not agreeing with me.

24              THE DEFENDANT:  Yes, sir.

25              THE COURT:  Okay?
```

1          The Court, having pronounced sentence, does

2    counsel for the defendant or Government have any objections

3    to the sentence or the manner in which the Court pronounced

4    sentence other than those previously stated for the record?

5          MR. AMBROSE:  Thank you, Your Honor.

6          We do object to the Court's ruling as to

7    application of 4B1.5(a) over (b).

8          And then for the record, if I may note the victims

9    in this case were notified of the hearing.  They are not

10   present.

11         THE COURT:  I'm sorry.  I should have asked about

12   that.  Thank you for pointing that out.

13         MS. GUZMAN:  Yes, Your Honor.

14         As to the defense, because this is likely a case

15   that will go up on appeal since it was a trial before a

16   jury and the jury rendered a guilty verdict, first of all,

17   I would renew any objections that were made during the

18   course of the trial.  Obviously, we respect the jury

19   verdict but disagree with it.  Mr. Eloi would maintain his

20   innocence as to the allegations in the indictment, in the

21   federal indictment.

22         As to the sentence, at this point we would again

23   object to the sentence as being unreasonable.

24         We would -- on the issue raised by Mr. Ambrose as

25   to his objection, we believe that the Court has calculated

1   the guidelines correctly using 4B1.5(a).  We would not

2   object to that under the current law.

3        That particular prior sentence would fall under

4   the definitions and instructions for computing criminal

5   history under 4A1.2.  Even though it was a deferred

6   sentence, it's counted as a conviction under federal law.

7        So we do not have an objection at this point

8   because obviously it would be a correct calculation.

9        But we do object to the sentence.  We believe that

10  the sentence is substantially unreasonable and more than

11  necessary to achieve the goals of 18/3553(a).

12       THE COURT:  It's very interesting to me that we

13  spend a lot of time applying the factors under the

14  guidelines to calculate a score, which sometimes is very

15  significant and sometimes it's -- in the end, it's really

16  not.  And as lawyers it's a challenge.  And it's not

17  altogether an unpleasant challenge.

18       But I always wonder about the disparity, the

19  disproportionate amount of time we spend doing those kinds

20  of things.  And this is one of those cases.  And I

21  appreciate the advice of counsel in trying to sort that

22  out.

23       The only thing I would say with regard to the

24  applicability of (a) or (b) is the sentence would have been

25  the same under either.

1          The first run at this, before Miss Guzman made her

2     objections known and we started looking at it more

3     carefully, it did appear to be a (b), a calculation under

4     (b).  So I know it would have been -- the sentence would

5     have been the same either way.

6          Your objections are noted.

7          Mr. Eloi, you are remanded to the custody of the

8     United States Marshal to await designation by the Bureau of

9     Prisons.

10          In the event of an appeal, it will be the

11     obligation and responsibility of appointed counsel to

12     continue representation on appeal unless and until relieved

13     by order of the Court of Appeals.

14          You have the right to appeal from this sentence

15     within 14 days from this date.  Failure to appeal within

16     the 14-day period shall be a waiver of your right to

17     appeal.  You may file an appeal from this sentence.

18          You're also advised that you're entitled to

19     assistance of counsel in taking an appeal.  And if you're

20     unable to afford a lawyer, one will be provided for you.

21          If you're unable to afford a filing fee, the clerk

22     of the court will be directed to accept the notice of

23     appeal without such fee.

24          And as I stated earlier, I will file along with

25     the written judgment my order explaining my ruling

1    pertaining to the application of the guidelines.

2          Thank you all.  Have a good day.

3          MS. GUZMAN:  Your Honor, one last thing.  In terms

4    of designation, I know that the Court can only make a

5    recommendation.

6          In this particular case, as the Court is aware,

7    it's a very long sentence.  His mother is elderly.  She

8    lives in West Palm Beach.

9          Would the Court consider an advisory designation

10   of Coleman?  I think anything else would make it very

11   difficult for his mother to be able to see him.

12         THE COURT:  His family has been here twice.  And

13   I've read the presentence report, and I've read letters

14   from members of the family.  And I'm convinced that they do

15   have a loving relationship with the defendant, and I think

16   he has great affection for them.  I think he would benefit

17   from having their company when possible during visitation,

18   and I think it would be good for them, too.

19         So I recommend that he be confined in Coleman.

20         MS. GUZMAN:  Thank you, Your Honor.

21         (Proceedings adjourned at 11:22 a.m.)

22                        * * * * *

23

24

25

1               C E R T I F I C A T E

2

3        I certify that the foregoing is a correct

4   transcript from the record of proceedings in the

5   above-entitled matter.

6

7   s\Amie R. First, RDR, CRR

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25